**IN THE CIRCUIT COURT OF THE TWELFTH CIRCUIT**
**IN AND FOR MANATEE COUNTY, FLORIDA**
**CIVIL DIVISION**

CYNTHIA LEE HORVATH, as Personal
Representative of the Estate of Amanda Whidden,

   Plaintiff,          Case No.: 2016-CA-5583

v.

ARMOR CORRECTIONAL HEALTH SERVICES, INC.,
THOMAS DOW; ALFREDO FERNANDEZ, MD;
PAULA BROWN, RN; JEANETTE KEYSO, LPN;
RACHEL L. MARLOW, LPN; DAWN M. McMULLEN, LPN;
FRANKIE MERIMAN, LPN; and GREGORY B. ADAMS, RN.

   Defendants.

_____/

## SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

Now comes Plaintiff, CYNTHIA LEE HORVATH, as Personal Representative of the

Estate of Amanda Whidden, by and through counsel, sues Defendants, ARMOR

CORRECTIONAL HEALTH SERVICES, INC., THOMAS DOW; ALFREDO FERNANDEZ,

MD; PAULA BROWN, RN; JEANETTE KEYSO, LPN; RACHEL L. MARLOW, LPN; DAWN

M. McMULLEN, LPN; FRANKIE MERIMAN, LPN; and GREGORY B. ADAMS, RN, and

alleges the following:

### PRELIMINARY STATEMENT

1.  This is an action for medical negligence, abuse and neglect of a vulnerable adult and

violations of civil rights action in which Plaintiff seeks relief for violations of her late daughter's

rights secured and guaranteed by Title 42, Section 1983 of the United States Code ("U.S.C."), the

Fourth, Eighth and/or Fourteenth Amendments to the United States Constitution, the laws of the

United States, and the laws of the State of Florida.

2.     The claims asserted herein arise from the December 25, 2014 death of Amanda Whidden, age 34, due to complications of her withdrawal symptoms because Armor's medical staff acted negligently and with deliberate indifference and were negligent/deliberately indifferent to her serious medical needs and failed to properly manage, monitor and treat her withdrawal symptoms, which became life threatening, as she laid in her jail cell in general population until she ultimately died in the early morning hours of Christmas of 2014.

3.     The claims asserted herein arise from acts, failures to act, and omissions committed, and policies, procedures, and customs in place and/or implemented, while Decedent, Amanda Whidden, was in the custody of the Manatee County Sheriff and during her detention at the Manatee County, Florida Jail/detention facility (the "Manatee County Jail") from on or about December 23-24 and early into the 25th of 2014, during which time the Defendants, all of whom were acting under the color of law, violated the known and clearly established Constitutional rights of Decedent's right to necessary medical care, and treatment.

4.     Defendants, THOMAS DOW, ("DOW"), ALFREDO FERNANDEZ, M.D., ("FERNANDEZ"), PAULA BROWN, ("BROWN"), JEANETTE KEYSO, L.P.N., ("KEYSO"), RACHEL L. MARLOW, L.P.N,, ("MARLOW"), DAWN M. MCMULLEN, L.P.N., ("MCMULLEN"), FRANKIE MERIMAN, L.P.N., ("MERIMAN"), and GREGORY B. ADAMS, RN (ADAMS), (collectively, the "Health Care Defendants") acted willfully, wantonly, maliciously, and with reckless and callous disregard for and deliberate indifference to the serious medical needs of Amanda Whidden, and in a manner that shocks the conscience and offends traditional notions of decency, all of which led to her wrongful and untimely death.

5.     Defendants, ARMOR CORRECTIONAL HEALTH SERVICES, INC., "ARMOR", THOMAS DOW, "DOW", ALFREDO FERNANDEZ, M.D., "FERNANDEZ", PAULA

2

BROWN, RN, "BROWN", JEANETTE KEYSO, L.P.N., "KEYSO", RACHEL L. MARLOW, L.P.N,, "MARLOW", DAWN M. MCMULLEN, L.P.N., "MCMULLEN", FRANKIE MERIMAN, L.P.N., "MERIMAN", and GREGORY B. ADAMS, RN, "ADAMS", implemented and/or had in place, at all times relevant, policies and customs that violated and/or that were applied in such a way that they violated the constitutional rights of pre-trial detainees at the Manatee County Jail, including Amanda Whidden, to prompt and adequate medical care to treat serious medical needs.

6.      Plaintiff seeks monetary damages (compensatory and punitive), as well as an award of costs and reasonable attorneys' fees, and all such other relief as the Court deems appropriate.

## PRELIMINARY ALLEGATIONS

7.      This action is brought, in part, under Title 42 U.S.C. § 1983 and under the Fourteenth Amendment of the United States Constitution and pursuant to the general laws of the United States and the laws of the State of Florida.

8.      Plaintiff alleges that the conduct of each Defendant deprived Decedent, Amanda Whidden, of her Constitutional right to life, and to medical and mental health care for her serious medical condition(s) and needs, and caused Amanda Whidden to suffer grievous physical and mental pain, suffering, anxiety, harm, and death while detained in the Manatee County Jail and under the direct and continuous custody, control, supervision, and care of the Defendants.

9.      Each of the Defendants named in the following Claims For Relief caused and is responsible for the unlawful conduct and resulting harm by, *inter alia,* personally participating in the conduct, or acting jointly and in concert with others who did so; by authorizing, acquiescing, or failing or refusing, with deliberate indifference to and reckless disregard for Amanda Whidden's clearly established and known rights, to initiate and maintain adequate training,

3

supervision, and staffing; by failing to maintain proper and adequate policies, procedures and protocols, and customs and practices; and by ratifying the unlawful conduct performed by agents medical providers, personnel, and employees under their direction, supervision, and control.

## JURISDICTION AND VENUE

10.     The Court has jurisdiction over this matter pursuant as the amount in controversy exceeds $15,000.00 exclusive of cost, interest and attorney's fees.

## PARTIES

11.     Plaintiff, CYNTHIA LEE HORVATH, is the duly appointed Administrator of the Estate of Amanda Whidden, Deceased, Manatee County, Florida Probate Court Case No. 2015CP001210AX, and at all times relevant is and was a citizen of the United States of America, residing in the state of Florida.  Letters of administration attached hereto as Exhibit "A".

12.     Plaintiff, Cynthia Lee Horvath, is the Mother of Amanda Whidden, deceased. Plaintiff, Cynthia Lee Horvath, is hereby identified as a potential beneficiary under Florida's Wrongful Death Act, including, but not limited to, Fla. Stat. § 768.21.

13.     In bringing this action against the above-named Defendants, Plaintiff, Cynthia Lee Horvath, acts in her representative capacity for the benefit and on behalf of the Estate of Amanda Whidden.

14.     Prior to her death, Decedent, Amanda Whidden, was a citizen of the United States of America residing in the state of Florida and entitled to the protections of the Constitutions and laws of the United States of America and the State of Florida.

15.     At all times relevant, Defendant, ARMOR, is and was a Florida Corporation, which contracted with Manatee County Sheriff's Office to provide adequate, necessary, and reasonable medical and mental health care, screening, assessment, treatment, intervention, referral, and

4

attention to those detained at the Manatee County Jail, and which was acting under color of law. Defendant, ARMOR, is sued in its individual corporate capacity.

16.     At all times relevant, Defendant, THOMAS DOW, was the Health Services Administrator, and was responsible for the administration, operation, and supervision of the medical staff working at the Manatee County Jail, and for the promulgation, enforcement and review of rules, regulations, policies, customs, and practices relevant thereto, who was acting under color of law. Defendant, DOW, is sued in his individual capacity

17.     At all times relevant, Defendant, PAULA BROWN, RN, was the Director of Nursing and was responsible for the administration, operation, and supervision of the medical staff working at the Manatee County Jail, and for the promulgation, enforcement and review of rules, regulations, policies, customs, and practices relevant thereto, who was acting under color of law. Defendant, BROWN, is sued in her individual capacity

18.     At all times relevant, Defendant, ALFREDO FERNANDEZ, M.D., was the Medical Director at the Manatee County Jail and was responsible for the administration, operation, and supervision of the medical staff working at the Manatee County Jail, and for the promulgation, enforcement and review of rules, regulations, policies, customs, and practices relevant thereto, who was acting under color of law. Defendant, FERNANDEZ, is sued in his individual capacity.

19.     Defendants, DOW, BROWN and FERNANDEZ, operated, maintained and/or controlled the medical facility at the Manatee County Jail at which Amanda Whidden was detained from on or about December 23-25, 2014, during which time she was under the custody, control and care of Manatee County Jail, including the employees and agents of the Armor Correctional Health Services, Inc.

5

20.     At all times relevant, Defendants, DOW, BROWN and FERNANDEZ, were under a non-delegable duty to promulgate policies, practices, procedures and/or customs to ensure that detainees at the Manatee County Jail were provided with adequate, necessary, and reasonable medical and mental health care, screening, assessment, treatment, intervention, referral, and attention.

21.     At all times relevant, Defendants, DOW, BROWN and FERNANDEZ, were under a non-delegable duty to provide adequate, necessary, and reasonable medical and mental health care, screening, assessment, treatment, intervention, referral, and attention to those detained at the Manatee County Jail.

22.     At all times relevant, Defendants, KEYSO, MARLOW, McMULLEN, MERIMAN and ADAMS, were medical/health personnel who were directly responsible for Amanda Whidden's medical care while she was detained at the Manatee County Jail, acting under the color of law and within the course and scope of their employment with Defendant, ARMOR. These Defendants are sued in their individual capacities. The individually named defendants will collectively be referred to as "The Health Care Defendants".

23.     At all times relevant, the Health Care Defendants were acting within the course and scope of their employment and/or agency with Defendant, ARMOR, such that Defendant, ARMOR is vicariously liable for the Health Care Defendants' conduct, including their actions and omissions.

## CONDITIONS PRECEDENT/NOTICE OF CLAIM(S)

24.     On August 26, 2016 Plaintiff served a Notice of Intent to Commence Litigation, pursuant to Florida Statute, Chapter 766, on Defendants, ARMOR, and all other entities as required under Florida law. By letter dated November 29, 2016, Defendant, ARMOR denied Plaintiff's claims relative to her Notice of Intent to Commence Litigation.

6

25.     To the extent applicable, Plaintiff has complied with all conditions precedent to the filing of this action, or such conditions have otherwise been waived.

## GENERAL FACTUAL ALLEGATIONS

26.     Decedent, Amanda Whidden, was detained at the Manatee County Jail from on or about December 23-25, 2014. During this period of detention, Amanda Whidden was within the continuous exclusive custody, supervision, and control of Defendants, ARMOR, and the Health Care Defendants.

27.     Amanda Whidden was 34 years old upon intake at the Manatee County Jail on December 23, 2014.  Ms. Whidden had a history of substance abuse with a noted long term history of Heroin abuse with history of withdrawal, including seizures.

28.     Amanda Whidden had a medical history of Asthma going back to childhood as reported by the patient on intake and in prior records and used an Albuterol inhaler.

29.     On intake on December 23, 2014, Amanda Whidden reported that she had used cocaine and injected heroin on the morning of being taken into custody.

30.     The intake nurse, Jeanette Keyso, LPN, documented that Amanda Whidden was under the influence of drugs, was disheveled, unsteady on her feet and very drowsy or sleepy.  The nurse reported a history of Asthma and noted that the patient reported recent withdrawal, including seizures 1 month ago while detoxing.

31.     Despite this history being reported to the intake LPN (Keyso) and Jeanette Keyso discussing these symptoms, including lethargy and being under the influence of drugs, with Gregory B. Adams, RN, Amanda Whidden was sent to general population, instead of the medical infirmary.  It is not indicated whether the medical director was notified of Amanda Whidden's current condition and reported history.

7

32.     Placing an inmate with a reported history, such as Amanda Whidden's, into general population and while under the influence of drugs, instead of into the infirmary was reckless as this inmate had a serious medical condition which needed to be monitored closely and the medical director should have been immediately notified.

33.     Amanda Whidden's high likelihood of experiencing withdrawal symptoms, along with her underlying medical condition (asthma), necessitated that she be housed in a medical wing where medical personnel could closely observe, assess and act in the event of the onset of withdrawal and/or medical complications commonly associated with withdrawal symptoms.

34.     On December 24, 2013, Amanda Whidden began to experience withdrawal symptoms as evidenced by an increased blood pressure during the a.m. check by an unknown Armor LPN. There is no indication that this vital sign was relayed to anyone.  Medical personnel should have been closely monitoring Amanda Whidden to observe, assess and act upon this type of clinical presentation.  This was not done.  The blood pressure was merely recorded, but no action was taken to notify the medical director, an RN or anyone to determine what action needed to be taken and instead her withdrawal symptoms were left to worsen, in an untreated and unsupervised manner.

35.     On December 24, 2014, the pm LPN doing rounds documented Amanda Whidden's blood pressure at 188/110.  Again no immediate action was taken.  The medical director was not contacted, and it was an hour before any withdrawal/detox medications were attempted to be initiated, but Amanda Whidden's condition was not monitored after administration of the medication.  This blood pressure reading required immediate attention as this blood pressure reading at this level is a medical crisis, particularly in an individual withdrawing from Heroin and Cocaine.  Despite documenting this dangerously high blood pressure, the nurse did not take her

8

blood pressure when she returned an hour later to administer the medications. Also noted was that Amanda Whidden was having nausea, vomiting and diarrhea and yet she was not transferred to the infirmary, or at this point to a hospital as it clear she was in distress. Without being able to monitor Amanda, no one could determine whether her condition was improving, worsening or staying the same.

36.     Approximately an hour after taking Amanda Whidden's vitals, withdrawal medication was administered but likely had no effect as Amanda Whidden was experiencing vomiting, diarrhea and respiratory distress. Amanda Whidden's blood pressure was not re-checked at this time either. Being left in general population and not taken to the infirmary after documenting vital signs/blood pressure as high as Amanda Whidden's was is unfathomable. Amanda Whidden needed immediate medical attention. Failure to provide it was outrageous and indifferent to her serious medical needs.

37.     Amanda Whidden was found dead in her cell just hours later in the early morning hours of December 25, 2014, with vomit and diarrhea visible all over her bed.

38.     The Armor Correctional medical director, DR. FERNANDEZ, administrator, DOW, Director of Nursing, BROWN and nurses KEYSO, MERIMAN, MARLOW, MCMULLEN, and ADAMS, breached all acceptable standards of care and that the treatment of Amanda Whidden shows neglect and indifference to the withdrawal and medical crisis Amanda Whidden was experiencing.

39.     These breaches were the cause/contributing factor to Amanda Whidden's death.

9

## FIRST CLAIM FOR RELIEF

**(Violation of 42 U.S.C. § 1983 Against Defendants Armor Correctional Health Services, Inc., Thomas Dow; Alfredo Fernandez, MD; Paula Brown, RN; Jeanette Keyso, LPN; Rachel L. Marlow, LPN; Dawn M. McMullen, LPN; Frankie Meriman, LPN; and Gregory B. Adams, RN, in their Individual Capacities, for Deliberate Indifference to Serious Medical Needs in Violation of Fourteenth Amendment.)**

40.     Plaintiff restates and incorporates paragraphs 1-39 as though set forth fully herein.

41.     This Second Claim for Relief is brought against Defendants, ARMOR, THOMAS DOW; ALFREDO FERNANDEZ, MD; PAULA BROWN, RN; JEANETTE KEYSO, LPN; RACHEL L. MARLOW, LPN; DAWN M. MCMULLEN, LPN; FRANKIE MERIMAN, LPN; and GREGORY B. ADAMS, RN, pursuant to 42 U.S.C. § 1983 for deliberate indifference to and callous and/or reckless disregard for the rights and critical medical needs of Decedent, Amanda Whidden, an individual suffering from obvious and known acute medical conditions that required appropriate care, treatment, assessment, intervention, referral, medication, and attention to prevent substantial physical  deterioration and death.

42.     At all times relevant, Amanda Whidden's obvious and known medical conditions required she receive special medical housing, and close medical supervision to monitor her impairment and later withdrawal symptoms which staff knew Amanda Whidden was likely to undergo during her incarceration.

43.     Defendant, ARMOR, including its employees and agents, The Health Care Defendants, were informed, knew, or should have known, that while in the custody of Manatee County at the Manatee County Jail, Amanda Whidden, was impaired, was a longtime user of opiates, suffered from Asthma and was likely to suffer serious irreparable harm and death, if her withdrawal was not monitored and appropriately treated.

10

44.     Despite knowledge of Amanda Whidden's history, drug use, and medical conditions, Defendants, ARMOR and The Health Care Defendants, were deliberately indifferent to and/or acted with callous/reckless disregard for those serious medical needs in failing and/or refusing to provide the necessary medical care, assessment, evaluation, intervention, referral, and treatment.

45.     Despite knowledge of Amanda Whidden's serious medical and mental health conditions and needs, the Defendants named in this Claim for Relief failed and/or refused, with deliberate indifference to Amanda Whidden's rights and serious medical and mental health needs, to properly assess and/or evaluate Amanda Whidden's serious medical conditions/symptoms, and failed and/or refused, with deliberate indifference to Amanda Whidden's rights and serious medical needs, to properly house and classify her within the Manatee County Jail, so that she would receive timely and adequate access to and delivery of necessary prescription medications and medical evaluation, assessment, care, intervention, referral, and treatment.

46.     The Defendants named in this Claim for Relief knew, or should have known, that taking little to no action could and would result in the rapid and permanent deterioration of Amanda Whidden's health and potentially death.

47.     As a direct and proximate result of the conduct of the Defendants named in this Claim for Relief in denying Amanda Whidden necessary medical assessment, evaluation, care, intervention, referral, and treatment, Amanda Whidden was forced to endure and suffered extreme physical, mental, and emotional pain and suffering, death, and pecuniary loss, including medical expenses, funeral and burial expenses, and death.

48.     As a direct and proximate result of the conduct of the Defendants named in this Claim for Relief in denying Amanda Whidden necessary medical and mental health assessment, evaluation, care, intervention, referral, and treatment, which resulted in her wrongful and untimely death,

E-Filed with MCCC - 2016CA005583AX- 8/17/2017 2:40 PM - PG 11 of 24

Amanda Whidden and the next of kin of Decedent, suffered, and will continue to suffer, mental anguish, emotional pain and suffering, loss of society, companionship, comfort, protection, care, attention, advice, counsel, services, guidance, loss of enjoyment of life, and pecuniary loss, including medical expenses, funeral and burial expenses, and lost earnings/income and/or benefits.

WHEREFORE, Plaintiff prays for judgment against Defendants, ARMOR, and the Medical Defendants jointly and severally, for:

a)  Compensatory damages in an amount that will fully and fairly compensate Plaintiff for their injury, damage, and loss;

b)  Punitive damages in an amount that will serve to adequately punish and deter the conduct alleged herein;

c)  Costs of suit and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988; and

d)  All such other relief which the Court deems appropriate.

## SECOND CLAIM FOR RELIEF

**(Violation of 42 U.S.C. § 1983 Against Defendants Armor Correctional Health Services, Inc., Thomas Dow; Alfredo Fernandez, MD; Paula Brown, RN; Jeanette Keyso, LPN; Rachel L. Marlow, LPN; Dawn M. McMullen, LPN; Frankie Meriman, LPN; and Gregory B. Adams, RN, in their Individual Capacities, for Failure to Supervise, Train and Take Corrective Measures Causing Constitutional Violation.)**

49.  Plaintiff restates and incorporates paragraphs 1-39 as though set forth fully herein.

50.  Plaintiff is informed and believes and thereon alleges that Defendants, ARMOR and The Health Care Defendants, knew, or should have known, of a history, custom, propensity, and pattern at times relevant to the allegations herein for ARMOR employees at the Manatee County Jail in failing and/or refusing to provide prompt and competent access to and delivery of medical needs in the assessment, evaluation, care, intervention, referral, and treatment, including to

Amanda Whidden. These Defendants' disregard of this knowledge, or failure and/or refusal to adequately investigate and discover and correct such history, customs and propensities, proximately caused the violation of the Constitutional rights of Plaintiff's Decedent as alleged herein.

51.     Plaintiff is informed and believes and thereon alleges that prior to the incident(s) alleged herein, the Defendants named in this Claim for Relief and other ARMOR and Health Care Defendants providers, and doctors, acting under their authority as officers and/or within the course and scope of their employment with Defendants ARMOR, committed similar acts of:

a)     Failing and/or refusing to provide timely adequate access to and delivery of medical care, assessment, evaluation, intervention, referral, and treatment for detainees at the Manatee County Jail with obvious and/or known serious medical health conditions and needs;

b)     Failing and/or refusing to provide timely adequate access to and delivery of necessary prescription medications to detainees at the Manatee County Jail;

c)     Failing and/or refusing to provide adequate housing and properly classify detainees at the Manatee County Jail so that they will have timely and adequate access to and delivery of necessary and indicated medical and mental health assessment, evaluation, care, intervention, referral, and treatment; and

e)     Failure and/or refusal to provide adequate monitoring and housing for detainees at the Manatee County Jail who present a risk of serious medical needs which could lead to physical and/or mental harm and death.

52.     Plaintiff is informed and believes and thereon alleges that the Defendants named in this Claim for Relief knew, or should have known, of this pattern or practice of unconstitutional

violations, or the existence of facts, practices, customs and/or habits, which create the strong potential for unconstitutional acts, and these Defendants had a duty to supervise, train, and instruct their subordinates to prevent similar acts to other detainees at the Manatee County Jail, including Amanda Whidden, but failed and/or refused to take reasonable and necessary steps to properly supervise, train, instruct, or investigate, physicians, nurses, medical and mental health personnel and/or agents or employees of Defendants ARMOR and as a direct and proximate result, Amanda Whidden, was harmed and suffered death.

53.     At all times relevant, the Defendants named in this Claim for Relief had the duty:

a)      To train, supervise, and instruct deputies, officers, nurses, physicians, medical and mental health personnel, and other agents and employees to ensure that they respected and did not violate federal Constitutional and statutory rights of detainees at the Manatee County Jail with regard to providing necessary medical care and to recognize serious medical needs such as withdrawal;

b)      To objectively investigate incidents of in-custody injury, deaths, inadequate classifications and contraindicated housing, denials of prescription medications, and to take necessary remedial action;

c)      To provide access to and delivery of timely competent medical and mental health assessment, evaluation, intervention, referral, care, treatment, follow-up, and attention to medically ill detainees at the Manatee County Jail, including those suffering from or likely to suffer from drug withdrawal.

d)      To monitor and periodically review the adequacy of medical and custodial staffing to ensure adequacy of medical and mental health care, treatment, intervention, referral, and attention rendered to physically ill detainees at the Manatee County Jail;

14

e)      To monitor and periodically review the classification and housing of physically ill detainees at the Manatee County Jail to ensure they are properly classified and housed;

f)      To comply with the statutory guidelines and the standard(s) of care protecting detainees at the Manatee County Jail and/or in the custodial setting;

g)      To adequately discipline and establish reasonable procedures to document and correct past violations, and to prevent future violations of Constitutional rights of detainees at the Manatee County Jail, by not condoning, ratifying and/or encouraging the violation of Amanda Whidden's and other detainees' constitutional rights; and

h)      To adequately and periodically train custodial and medical and mental health staff on understanding, recognizing, reporting, and responding to issues of physical and mental health/episodes/symptoms, including withdrawal, of detainees at the Manatee County Jail.

54.     The Defendants named in this Claim for Relief breached the foregoing duties by:

a)      Failing and/or refusing to train, supervise, and instruct deputies, officers, nurses, physicians, medical and mental health personnel, and other employees of Defendant, ARMOR, on the violations of the Constitutional rights of Amanda Whidden and other detainees;

b)      Failing and/or refusing to objectively investigate: in custody injury, deaths, inadequate classifications and contraindicated housing, denials of prescription medications, and failing and/or refusing to take necessary remedial action, including treatment of alcohol and/or drug withdrawal;

c)      Failing and/or refusing to provide timely competent medical assessment, evaluation, care, treatment, referral, and intervention for physically ill detainees at the

15

Manatee County Jail, including those suffering from withdrawal, which resulted in serious injury or death;

d)      Failing and/or refusing to monitor a detainee's medical condition, which resulted in serious injury or death;

e)      Failing and/or refusing to monitor and periodically review the quality of medical and mental health assessment, evaluation, care, treatment, referral, and intervention provided to mentally and physically ill detainees;

f)      Failing and/or refusing to monitor and periodically review the timelines and adequacy of medical and mental health assessment, evaluation, care, treatment, referral, and intervention rendered to mentally and physically ill detainees;

g)      Failing and/or refusing to monitor and periodically review the classification of detainees at the Manatee County Jail to ensure they are properly housed;

h)      Failing and/or refusing to comply with the statutory guidelines and the standard(s) of care protecting detainees at the Manatee County Jail and/or in the custodial setting;

i)      Failing and/or refusing to adequately discipline and establish reasonable procedures to document and correct past violations, and to prevent future violations of Constitutional rights of detainees at the Manatee County Jail, by not condoning, ratifying and/or encouraging the violation of Amanda Whidden's and other detainees' constitutional rights;

j)      Failing and/or refusing to adequately and periodically train custodial and medical and mental health staff on understanding, recognizing, reporting, and responding to issues of physical health/episodes/symptoms of detainees at the Manatee County Jail; and

k)      Overseeing, supervising, authorizing, approving of and/or ratifying the medical care and access thereto provided and not provided to Amanda Whidden.

55.     As a direct and proximate result of the conduct of the Defendants named in this Claim for Relief, Amanda Whidden was forced to endure and suffer extreme physical, mental, and emotional pain and suffering, death, and pecuniary loss, including medical expenses, funeral and burial expenses, and lost earnings and/or benefits.

56.     As a direct and proximate result of the conduct of the Defendants named in this Claim for Relief, which resulted in Amanda Whidden's wrongful and untimely death, Amanda Whidden and the next of kin of Amanda Whidden, including CYNTHIA LEE HORVATH, suffered and will continue to suffer, mental anguish, emotional pain and suffering, loss of society, companionship, comfort, protection, care, attention, advice, counsel, services, guidance, loss of enjoyment of life, and pecuniary loss, including medical expenses, funeral and burial expenses.

WHEREFORE, Plaintiff prays for judgment against Defendants, ARMOR and The Health Care Defendants, for:

a)      Compensatory damages in an amount that will fully and fairly compensate Plaintiff, for their injury, damage, and loss;

b)      Punitive damages against Defendants ARMOR and The Health Care Defendants in an amount that will serve to adequately punish and deter the conduct alleged herein;

c)      Costs of suit and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988; and

d)      All such other relief which the Court deems appropriate.

## THIRD CLAIM FOR RELIEF

**(Violation of 42 U.S.C. § 1983 Against Defendant Armor Correctional Health Services, Inc., Thomas Dow; Alfredo Fernandez, MD; Paula Brown, RN; Jeanette Keyso, LPN; Rachel L. Marlow, LPN; Dawn M. McMullen, LPN; Frankie Meriman, LPN; and Gregory B. Adams, RN,  in their individual capacities for Custom, Policy, or Practice Causing Constitutional Violations.)**

57.     Plaintiff restates and incorporates paragraphs 1-39 as though set forth fully herein.

58.     At all times relevant, Defendants, ARMOR and The Health Care Defendants, promulgated and maintained a de facto unconstitutional custom, policy, or practice of permitting, ignoring, condoning and/or encouraging, nurses, physicians, medical and mental health personnel, and other employees and agents to delay and or deny the provision of timely adequate medical and mental health assessment, evaluation, care, treatment, referral, and intervention; deny and/or delay the provision of necessary prescription medications, and fail and/or refuse timely and adequate monitoring, observation, and treatment to detainees at the Manatee County Jail, including Amanda Whidden, including the lack of, inappropriate and/or inadequate, incompetent, or untimely:

  a)     Intake medical and mental health screening, assessment, referral, intervention, and evaluation;

  b)     Diagnoses of medical and mental health conditions, behaviors, and symptoms;

  c)     Recognition of medical and mental health conditions and symptoms;

  e)     Medical and mental health care treatment and care plans;

  f)     Administration of prescription medications and treatment;

  g)     Administration, storage, dissemination, and availability of detainees', including Amanda Whidden's medical and mental health records and information;

  h)     Tracking of detainees' status and indicated housing;

18

i)      Staffing, training, and supervision of nurses, physicians, and/or medical and mental health personnel;

j)      Quality assurance;

k)      Housing and classification of detainees in need of medical and/or mental health assessment, evaluation supervision, referral, treatment, care and/or intervention or management; and

l)      Access and delivery of medical and mental health care.

m)     Recognition and appropriate treatment of serious medical needs/emergencies such as life threatening drug withdrawal.

59.    These customs, policies and/or practices were the direct and proximate cause of the Constitutional violations visited upon, and the injuries and death of Amanda Whidden, and each of the Defendants named in this Claim for Relief acting in accordance with these customs, policies, or practices acted with deliberate indifference to and/or reckless and callous disregard for the rights and serious medical and mental health needs of detainees, including Amanda Whidden, at the Manatee County Jail.

60.    At all times relevant, the policies, customs and/or procedures referenced in this Claim for Relief were facially and/or de facto violative of the clearly established and known rights of detainees at the Manatee County Jail, including Amanda Whidden, and their implementation constitutes deliberate indifference to and/or reckless and callous disregard for the Constitutional rights and serious medical and mental health needs of said detainees, including Amanda Whidden, all of which shocks the conscience and offends traditional notions of decency.

61.    At all times relevant, the policies, customs and/or procedures referenced in this Claim for Relief were applied in such a manner, and known by Defendant's, ARMOR and The Health Care

19

Defendants, to be applied in such a manner, such that violations of the Constitutional rights of detainees at the Manatee County Jail, including Amanda Whidden, were likely and substantially certain to, and did, occur. Furthermore, the application and/or misapplication of these policies, practices and/or procedures amount to deliberate indifference to and reckless and callous disregard for the Constitutional rights and serious medical and mental health needs of detainees at the Manatee County Jail, including Amanda Whidden, all of which shocks the conscience and offends traditional notions of decency.

WHEREFORE, Plaintiff prays for judgment against Defendants, ARMOR and The Health Care Defendants, jointly and severally, for:

a)      Compensatory damages in an amount that will fully and fairly compensate Plaintiff for their injury, damage, and loss;

b)      Costs of suit and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988; and c) All such other relief which the Court deems appropriate.

## FOURTH CLAIM FOR RELIEF
## MEDICAL NEGLIGENCE AGAINST ARMOR
## (DIRECT AND VICARIOUS LIABILITY)

62.     Plaintiff restates and incorporates paragraphs 1-39 as though set forth fully herein.

63.     Defendant, ARMOR, is directly liable and vicariously liable for the negligence of agents, servants, and employees committed during the course and scope of their employment with ARMOR.

64.     At all times pertinent hereto, Defendants, PAULA BROWN, RN; RACHEL L. MARLOW, LPN; FRANKIE MERIMAN, LPN; an GREGORY B. ADAMS, RN, and others were an agent, servant or employee of Defendant, ARMOR, acting with the course and scope of their employment.

20

65.     At all times pertinent hereto, Defendant, ARMOR and its agents, servants, and employees who provided health care services to Amanda Whidden had a duty to use that level of care, skill, and treatment which, in light of all relevant surrounding circumstances, is recognized as acceptable and appropriate by similar and reasonable health care providers.

66.     Defendant, ARMOR and its agents, servants, and employees who provided health care services to Plaintiff breached their duty with gross negligence.  Such breaches of duty included, but not limited to, the following:

a)      Failing to maintain Amanda Whidden on close supervision;

b)      Failing to adequately screen and assess and treat Amanda Whidden for risk of withdrawal;

d)      Failing to train and supervise health care personnel to ensure that proper screening and assessments of inmates at risk for withdrawal were performed;

e)      Failing to provide and staff the jail with adequately trained and licensed medical personnel;

f)      Failing to insure that inmates at high risk of withdrawal, such as Amanda Whidden, were properly treated and monitored;

g)      Failing to follow ARMOR'S policies and procedures pertaining to housing    and treating inmates at risk of withdrawal;

i)      Failing to adopt and implement adequate policies and procedures for the prevention of withdrawal;

j)      Failing to provide medical care reasonably needed by inmates under their care in order to maximize profits under the contract with Manatee County;

l)      Failing to recognize signs of life threatening withdrawal;

21

o)     Failing to properly staff the medical wing so as to increase profits; and

p)     Failing to comply with Florida Model Jail Standards pertaining to the

prevention of withdrawal.

67.    Defendant, ARMOR'S, conduct was so reckless or wanting in care that it constituted a conscious disregard or indifference to the life, safety or rights of Amanda Whidden.

68.    The officers, directors, or manages of Defendant, ARMOR, knowingly condoned, ratified, or consented to such conduct in that they intentionally understaff the Manatee County Jail and others in a manner that endangers the lives and safety of the inmate population so as to increase profitability at the expense of the inmate safety.

69.    As a direct consequence and proximate result of the gross negligence of Defendant, ARMOR, Amanda Whidden died in custody as a direct and proximate cause of improperly monitored and treated drug withdrawal.

**WHEREFORE**, the Plaintiff demands judgment against Defendant, ARMOR, for compensatory damages in excess of Fifteen Thousand Dollars ($15,000.00), plus costs and other relief this Court deems appropriate and demands a trial by jury.

### FIFTH CLAIM FOR RELIEF; MEDICAL NEGLIGENCE AGAINST PAULA BROWN, RN; RACHEL L. MARLOW, LPN; FRANKIE MERIMAN, LPN and GREGORY B. ADAMS, RN

70.    Plaintiff restates and incorporates paragraphs 1-39 as though set forth fully herein.

71.    At all times pertinent hereto, Defendants, PAULA BROWN, RN; RACHEL L. MARLOW, LPN; FRANKIE MERIMAN, LPN, and GREGORY B. ADAMS, RN, who provided/should have provided health care services to Amanda Whidden had a duty to use that level of care, skill, and treatment which, in light of all relevant surrounding circumstances, is recognized as acceptable and appropriate by similar and reasonable health care providers.

22

72.     Defendants, PAULA BROWN, RN; RACHEL L. MARLOW, LPN; FRANKIE MERIMAN, LPN, and GREGORY B. ADAMS, RN, who provided health care services to Plaintiff, breached their respective duties with gross negligence.  Such breaches of duty included, but are not limited to, the following:

a)     Failing to maintain Amanda Whidden on close supervision;

b)     Failing to adequately screen and assess and treat Amanda Whidden for risk of withdrawal;

d)     Failing to train and supervise health care personnel to ensure that proper screening and assessments of inmates at risk for withdrawal were performed;

e)     Failing to provide and staff the jail with adequately trained and licensed medical personnel;

f)     Failing to insure that inmates at high risk of withdrawal, such as Amanda Whidden, were properly treated and monitored;

g)     Failing to follow ARMOR'S policies and procedures pertaining to  housing     and treating inmates at risk of withdrawal;

i)     Failing to adopt and implement adequate policies and procedures for the prevention of withdrawal;

j)     Failing to provide medical care reasonably needed by inmates under their care in order to maximize profits under the contract with Manatee County;

l)     Failing to recognize signs of life threatening withdrawal;

o)     Failing to properly staff the medical wing so as to increase profits; and

p)     Failing to comply with Florida Model Jail Standards pertaining to the prevention of withdrawal.

23

73.    Defendants' conduct was so reckless or wanting in care that it collectively and/or individually constituted a conscious disregard or indifference to the life, safety or rights of Amanda Whidden.

74.    As a direct consequence and proximate result of the gross negligence of Defendants, PAULA BROWN, RN; RACHEL L. MARLOW, LPN; FRANKIE MERIMAN, LPN and GREGORY B. ADAMS, RN,  Amanda Whidden died in custody as a direct and proximate cause of improperly monitored and treated drug withdrawal.

   **WHEREFORE**, the Plaintiff demands judgment against Defendants, PAULA BROWN, RN; RACHEL L. MARLOW, LPN; FRANKIE MERIMAN, LPN and GREGORY B. ADAMS, RN for compensatory damages in excess of Fifteen Thousand Dollars ($15,000.00), plus costs and other relief this Court deems appropriate and demands a trial by jury.

   Dated this 17th day of August, 2017.


                    */s/ Patrick W. Harland, Jr., Esq.*
                    Patrick W. Harland, Jr., Esquire
                    Florida Bar No.: 0226350
                    THE LAW FIRM OF PATRICK W. HARLAND, JR., LLC
                    One Progress Plaza
                    200 Central Avenue, Suite 400
                    St. Petersburg, FL 33701
                    Telephone: 727-898.2000/Facsimile: 727-898.2001
                    Email: pleadings@harlandlawfirm.com
                    Attorney for Potential Plaintiff

                    And

                    Christian L. Pipas, Esq.
                    Florida Bar No.: 102212
                    PIPAS LAW GROUP
                    360 Central Avenue, Suite 430
                    St. Petersburg, FL 33701
                    Telephone: 727-888-3925/Facsimile: 727-258-0082
                    Email: Christian@pipaslaw.com

24